## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TONY MICHAEL VANLUVEN,

   Petitioner,

                           CASE NO. 2:19-CV-12156

v.                        HONORABLE PAUL D. BORMAN
                           UNITED STATES DISTRICT  JUDGE

MARK MCCULLICK,

   Respondent,

_____/

## OPINION AND ORDER (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Tony Michael VanLuven, ("Petitioner"), incarcerated at the Central Michigan  Correctional Facility in St. Louis, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for domestic violence, third offense, Mich. Comp. Laws § 750.814, bribing, intimidating, or interfering with a witness, Mich. Comp. Laws § 750.1227(1)(A), and being a third habitual offender, Mich. Comp. Laws § 769.11. For the reasons that follow, the petition for writ of habeas corpus is DENIED WITH PREJUDICE.

## I. BACKGROUND

Petitioner pleaded guilty to the above charges in the Oakland County Circuit Court.  In exchange for his plea, the judge entered into a *Cobbs* agreement with

1

petitioner to sentence him to no more than 27 months on the minimum sentences for both offenses. (ECF No. 9-3, PageID.193-94).  Petitioner indicated on the record that he has heard the offer the trial court placed on the record and that he had an opportunity to discuss the offer with his defense attorney.  Petitioner stated that he wished to plead guilty. Petitioner was advised of the maximum penalties for the offenses. Petitioner acknowledged that as a result of his guilty plea, he would be giving up his right to a jury trial, as well as all of the rights associated with a trial.  Petitioner agreed that his guilty plea was not the result of promises or threats that were not disclosed to the trial court on the record.  Petitioner indicated that there was no plea bargain with the prosecutor's office but acknowledged that the judge had agreed to a minimum sentence of no more than 27 months.  Petitioner admitted that the plea was his own free choice. (*Id.,* PageID.195-99).   Petitioner made out a factual basis for the offenses. (Id., PageID.199-202).

At sentencing, the prosecutor brought to the judge's attention that petitioner had engaged in misconduct after the plea hearing on August 27, 2015 and before the sentencing date. (ECF No. 9-4, PageID.214-15).

Petitioner wrote a letter to his aunt, Donna Fox, and asked her to make claims about the victim, VanLuven's wife (Dominique), in order to obtain revenge. Petitioner told his aunt to call Child Protective Services (CPS) and report that Dominique was exposing their shared daughter to heroin addicts, that she was out

partying and leaving their daughter with just anyone, and that Dominique smoked marijuana in front of their daughter.  Petitioner also instructed his aunt to call the Department of Health and Human Services (DHHS) to report that the victim was using petitioner to get extra food stamps.  Petitioner also advised his aunt to call the police and claim that Dominique was engaged in tax fraud.  In the letter, VanLuven specifically said, "I want to make this bitch suffer like I am. It's time to get her back. My case is over and she fucked me, now it's my time."  (ECF No. 9-4, PageID.215-16).

Petitioner again called his aunt on September 1, 2015.  Petitioner told her to call DHHS to have Dominique's food stamps cancelled; petitioner's aunt agreed to do so.  Petitioner asked his aunt to call CPS again; she said she planned to do so. Petitioner asked his aunt to call the police to allege that Dominique was harassing her by driving by her house and saying, "Bitch, I'm going to fuck you up." Petitioner coached his aunt to say that Dominique was driving by her house in a Chevrolet HHR with green flames because that was the car Dominique's mother drove.  Petitioner told his aunt to take these actions because he wanted Dominique to go to jail.  Petitioner said he wanted to go "balls to the wall[]" on this plan. (ECF No. 9-4, PageID.216).

The prosecutor argued that petitioner's conduct was a violation of a condition of his bond that he have no contact with his wife as well as a violation of

3

the court order suspending his telephone privileges at the jail. (ECF No. 9-4, PageID.218-19).

The trial judge ruled that petitioner's conduct and his communications constitute misconduct under Mich. Ct. R. 6.310(B)(3) because it was a violation of a condition of his bond that he have no-contact with the victim, but that his method used to employ one of the communications, a telephone call to his aunt, also constituted misconduct because petitioner's phone privileges had been ordered suspended by both the local district court and the trial court. Because of petitioner's misconduct, the judge concluded that he was not bound by the *Cobbs* evaluation pursuant to the court rule.  Petitioner was sentenced to consecutive sentences of six years, six months to ten years on the domestic violence charge, and five to eight years on the witness intimidation charge. (ECF No. 9-4, PageID.222-25).

Petitioner's conviction was affirmed on appeal. *People v. VanLuven,* No. 331366 (Mich. Ct. App. Mar. 10, 2016), *lv. den.* 500 Mich. 857, 883 N.W.2d 762 (2016).

Petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.,* which the trial court denied. *People v. VanLuven*, No. 15-253848-FH (Oakland Cnty. Cir. Ct., Jan. 11, 2018) (ECF No. 9-7).  The Michigan appellate courts denied petitioner leave to appeal. *People v. VanLuven,* No. 344206

(Mich. Ct. App. Nov. 9, 2018), *lv. den.* 504 Mich. 901, 929 N.W.2d 339 (2019),

*reconsideration den.* 504 Mich. 974, 933 N.W.2d 301 (2019).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court erred when it did not give defendant VanLuven an opportunity to withdraw his guilty pleas under *People v. Cobbs* before it sentenced him.

II. Defendant is entitled to withdrawal of plea, where trial counsel was ineffective for failure to object to the court not upholding its 27-month *Cobbs* agreement, failing to notify defendant of potential consecutive sentencing, and failure to motion to withdraw plea before sentencing, or motion to withdraw plea after sentencing.

III. Defendant was denied the effective assistance of appellate counsel as guaranteed by the U.S. Const am xiv, Mich const 1963, art 1 §20, where his attorney failed to file a motion to withdraw plea, for exceeding the ten-year maximum, or raise ineffective assistance of trial counsel, forfeiting defendant's constitutional rights.

IV. Defendant is entitled to withdrawal of plea. He unknowingly and involuntarily entered a plea of guilty where trial court failed to give correct instruction on the maximum and the minimum possible sentence, and not informing defendant that his sentences would be served consecutively.

V. Trial court abused its discretion by departure of the *Cobbs* agreement without allowing defendant to withdraw his plea or accept plea, prior to sentencing. Abusing its discretion by sentencing defendant to eleven and a half years on the minimum, when maximum was only up to ten years, for third offense habitual.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Petitioner's first claim was raised on his direct appeal. The Michigan Court of Appeals denied petitioner's application for leave to appeal on petitioner's direct appeal in a form order "for lack of merit in the grounds presented." The Michigan Supreme Court subsequently denied the petitioner leave to appeal in a standard form order without any extended discussion. Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, as would warrant federal habeas relief, does not require that there be an opinion from the state court that explains the state court's reasoning. *Harrington*, 562 U.S. at 98. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. In fact, when a habeas petitioner has presented a federal claim to a state court and that state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. That presumption may be overcome only when there is a reason to think that some other explanation for the state court's decision is more likely. *Id*. at 99-100.

The AEDPA deferential standard of review applies to petitioner's first claim where the Michigan Court of Appeals rejected petitioner's appeal "for lack of merit in the grounds presented" and the Michigan Supreme Court subsequently

denied leave to appeal in a standard form order, because these orders amounted to a decision on the merits. See *Werth v. Bell*, 692 F. 3d 486, 492-94 (6th Cir. 2012).

Petitioner's remaining claims were raised in his post-conviction motion for relief from judgment.  In reviewing a claim under the AEDPA's deferential standard of review, this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) (quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005)).  The Michigan Court of Appeals and the Michigan Supreme Court both denied petitioner's post-conviction application for leave to appeal in unexplained one-sentence orders.  Accordingly, this Court must "look through" these decisions to the Oakland County Circuit Court opinion denying the motion for relief from judgment, which was the last state court to issue a reasoned opinion. Then, the Court can decide whether that court's adjudication of petitioner's claims was "contrary to," or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See Hamilton v. Jackson*, 416 F. App'x 501, 505 (6th Cir. 2011). Although the state judge court judge procedurally defaulted the claims because petitioner failed to show cause and prejudice for failing to raise these claims on his direct appeal, the judge also denied the claims on the merits, thus, the AEDPA's deferential standard of review applies to the opinion. *See Moritz v. Lafler*, 525 F. App'x 277, 284 (6th Cir. 2013).

8

Respondent argues that petitioner's second through fifth claims are procedurally defaulted because petitioner failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for not raising them on his direct appeal. Petitioner argues that appellate counsel was ineffective.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of the claims, it would be easier to consider the merits of the claims. *Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

## III. DISCUSSION

The Court discusses petitioner's claims together because they are intertwined and often overlap.

Petitioner in his first claim alleges that the trial judge erred in not permitting petitioner to withdraw his guilty plea when the judge refused to sentence petitioner to twenty seven months in prison on the minimum sentences, as the judge had promised to do. In his second claim, petitioner argues that trial counsel was ineffective for failing to object to the judge's refusal to honor the sentencing agreement and/or failing to move to withdraw the plea on that basis.  Petitioner also claims that trial counsel was ineffective for failing to inform him that he could be subjected to consecutive sentencing.  Petitioner in his third claim alleges that

9

appellate counsel was ineffective for failing to move to withdraw the plea on the ground that the judge exceeded the ten year maximum penalty for the offense. Petitioner in his fourth claim alleges that his plea was involuntary because the judge gave him incorrect information on the minimum and maximum penalties for the offenses and failed to warn him that he could be subjected to consecutive sentencing. Petitioner in his fifth claim again argues that the judge abused his discretion in failing to allow petitioner to withdraw his plea, because the judge exceeded the maximum penalties for the offenses.

Petitioner has no federal constitutional right to withdraw his guilty plea. *See Hynes v. Birkett,* 526 F. App'x 515, 521 (6th Cir. 2013). Unless a petitioner's guilty plea otherwise violated a clearly-established constitutional right, whether to allow the withdrawal of a habeas petitioner's guilty plea is discretionary with the state trial court. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005).

A guilty plea that is entered in state court must be voluntarily and intelligently made. *See Shanks,* 387 F. Supp. 2d at 749; *Doyle v. Scutt,* 347 F. Supp. 2d 474, 482 (E.D. Mich. 2004) (both citing *Boykin v. Alabama,* 395 U.S. 238, 242 (1969)). In order for a plea of guilty to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 257 (6th Cir.

1991).  The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994).  When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).  The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness.  Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.*

It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984).  A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e. bribes). *Id.*

Petitioner's plea of guilty was voluntary.  Contrary to petitioner's allegations, petitioner was advised of the correct maximum penalties for the

11

underlying offenses as well as how the maximum penalties were increased because of petitioner's status as a third habitual offender. The terms of the sentencing agreement were placed on the record.  Petitioner acknowledged that these were the complete terms of the agreement.  Petitioner was advised of the rights to a trial that he would relinquish by pleading guilty.  Petitioner acknowledged that he was waiving these rights by pleading guilty.  Petitioner denied that any threats or promises that had not already been disclosed on the record had been made to induce his plea.  (ECF No. 9-3.)

Petitioner initially argues that the judge should have permitted him to withdraw his guilty plea after the judge declined to follow the sentencing agreement of 27 months on the minimum sentences and instead sentenced petitioner to a far greater sentence on the minimum sentences.  Petitioner also argues that the judge should have permitted him to withdraw his pleas because he exceeded the maximum penalties for the crimes.

In *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), the Michigan Supreme Court authorized a judge to preliminarily indicate the appropriate length of sentence, but if the defendant subsequently pleads guilty or no-contest and the judge determines that the sentence must exceed the preliminary evaluation, the defendant has an absolute right to withdraw the plea. See M.C.R. 6.310(B)(2)(b); *Wright v. Lafler*, 247 F. App'x 701, 703, n.1 (6th Cir. 2007).

There is one exception to the rule enunciated in *Cobbs.* M.C.R. 6.310(B)(3) states:

> (3) Except as allowed by the trial court for good cause, a defendant is not entitled to withdraw a plea under subsection (2)(a) or (2)(b) if the defendant commits misconduct after the plea is accepted but before sentencing. For purposes of this rule, misconduct is defined to include, but is not limited to: absconding or failing to appear for sentencing, violating terms of conditions on bond or the terms of any sentencing or plea agreement, or otherwise failing to comply with an order of the court pending sentencing.

M.C.R. 6.310(B)(3) "clarifies that a defendant's misconduct that occurs between the time the plea is accepted and the defendant's sentencing may result in a forfeiture of the defendant's right to withdraw a plea in either a *Cobbs* or *Killebrew*[1] case." *People v. Martinez*, 307 Mich. App. 641, 649, 861 N.W.2d 905, 910, n.5 (2014) (citing Mich. Ct. R. 6.310(B)(3) (Staff Comment to 2014 Amendment)).

The state court judge determined that petitioner violated the condition of his bond that he have no contact with his wife and also engaged in misconduct because he violated the court order suspending his telephone privileges at the jail by telephoning his aunt. This is a factual determination that was resolved against petitioner by the state trial judge. Petitioner does not offer clear and convincing evidence to overcome the presumption of correctness attached to this factual

---

[1] *People v. Killebrew,* 416 Mich. 189, 330 N.W. 2d 834 (1982).

finding. *See Prichard v. Winn*, No. 19-CV-12711, 2021 WL 3489688, at *3 (E.D. Mich. Aug. 9, 2021). Under Michigan law, when "the defendant commits misconduct after the plea is accepted but before sentencing" a defendant is not entitled to withdraw the plea, even if the judge fails to follow the sentencing agreement. *Id*. at *4 (citing M.C.R. 6.310(B)(3)). Petitioner is not entitled to habeas relief on his claim that he was not permitted to withdraw his plea when the judge exceeded the sentencing agreement after finding that petitioner violated the conditions of his bond and violated the order suspending his telephone privileges. *Id.*

This Court is aware that an unfulfilled state promise obtained in return for a guilty plea will entitle a habeas petitioner to habeas relief. *Myers v. Straub,* 159 F. Supp. 2d 621, 627 (E.D. Mich. 2001). Moreover, any promises made by a judge in the course of a guilty plea colloquy operate as a promise made by the state in exchange for a defendant's waiver of rights and guilty plea. *See Spencer v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 168 (2d Cir. 2000).

However, there is no Supreme Court opinion which holds that "[f]ederal due process requires that all conditions placed on a sentence promised in a plea bargain be communicated to the defendant unambiguously." *Mask v. McGinnis*, 252 F.3d 85, 89-90 (2d Cir. 2001); *see also Myers v. Straub,* 159 F. Supp. 2d at 627. The state court judge's *Cobbs* agreement with petitioner, implicitly, at least, was

14

conditioned on petitioner not violating the terms of his bond or engaging in other forms of misconduct between the plea and sentencing. When petitioner attempted to contact his wife through his aunt, he violated the no-contact condition of his bond. He also violated the court order denying him the use of the telephone while in jail. Both of petitioner's actions contravened court orders, thus, petitioner essentially violated the terms of the sentencing agreement and forfeited the right to withdraw his guilty plea. *See Burch v. Maclaren*, No. 2:14-CV-13984, 2015 WL 4599856, at \*5 (E.D. Mich. July 29, 2015). "A criminal defendant who breaches the terms of the plea agreement forfeits any right to its enforcement." *Id.* (citing *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000)). Because petitioner breached the terms of the *Cobbs* agreement by violating the no-contact order and the order suspending his telephone privileges, he is not entitled to enforcement of the sentencing bargain nor is he entitled to withdraw his plea of guilty. *Id.*

Petitioner's related claim that he should be permitted to withdraw his plea because the judge exceeded the maximum sentences for the offenses that he was convicted of is meritless. Domestic violence, third offense carries up to five years in prison. Witness intimidation carries up to four years in prison. Petitioner was also charged with being a third felony habitual offender, which allows a judge to double the maximum sentence on the underlying charge. *See People v. Edgett,* 220 Mich. App. 686, 688, 560 N.W.2d 360 (1996) (citing Mich. Comp. Laws §

769.11).  Petitioner received a ten year maximum sentence on the domestic

violence charge and an eight year maximum sentence on the witness intimidation

charge.  Petitioner's maximum sentences did not exceed the statutory maximum,

when factoring in petitioner's status as an habitual offender.  Petitioner's claim is

without merit.

Petitioner also argues that his plea was involuntary because he was not

advised of the collateral consequences of pleading guilty.  Petitioner claims that he

was not advised by the judge that he could receive consecutive sentences for the

offenses.

A defendant need only be made aware of the direct consequences of a guilty

plea for the plea to be made voluntarily and intelligently; a trial court is under no

obligation to inform a defendant of all possible collateral consequences of a plea.

*King v. Dutton,* 17 F.3d at 153.  Whether a sentence runs consecutive or concurrent

to other sentences is not considered a direct consequence of a guilty plea, for

determining whether a defendant voluntarily entered a guilty plea with a full

understanding of the direct consequences of the plea. *United States v. Ferguson,*

918 F.2d 627, 630 (6th Cir. 1990); *see also Hall v. Bradshaw*, 466 F. App'x 472,

474 (6th Cir. 2012) (petitioner not entitled to habeas relief because judge failed to

advise petitioner that his state sentence could be served consecutively to federal

sentence).  Petitioner is not entitled to habeas relief on his claim.

Petitioner also claims that his trial counsel was ineffective.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner claims that trial counsel was ineffective for failing to enforce the sentencing agreement, or in the alternative file a motion to withdraw the guilty plea.  Although unclear, petitioner may also be arguing that appellate counsel was ineffective for failing to file a motion to withdraw the plea on this basis.

Petitioner failed to show that his plea was involuntary or that there had been a breach of the plea agreement.  Counsel was not ineffective in failing to move for the withdrawal of petitioner's guilty plea, being that there was no basis to do so. *See United States v. Martin,* 45 F. App'x 378, 381-82 (6th Cir. 2002).  Moreover, because neither the judge nor the prosecutor breached the sentencing agreement, it instead being petitioner who did so by violating two court orders including a no-contact provision with the victim, counsel would have no reason to object and was

thus not ineffective for failing to object to the alleged breach. *See Wright v. United States*, 320 F. App'x 421, 424 and n.1 (6th Cir. 2009).

Petitioner also alleges that trial counsel was ineffective for failing to advise him that he could receive consecutive sentences if he violated his bond conditions.

Petitioner is not entitled to relief on his claim for two reasons.

First, petitioner raised this claim in his post-conviction motion.  The trial judge denied the claim in part because petitioner failed to offer any evidence in support of his claim. (ECF No. 9-7, PageID.317-18).

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  By failing to present any evidence to the state courts in support of this ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)).

Moreover, this Court would be unable at this point to entertain any affidavits or testimony at this point in support of this claim.  The United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Therefore, *Cullen* would preclude

18

the Court from considering any new evidence that petitioner would even want to present at this point in support of his ineffective assistance of trial counsel claim under 28 U.S.C. §2254(d). *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012) (declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).

Secondly, as the state court concluded in rejecting petitioner's claim, consecutive sentences are a collateral consequence of a guilty plea, hence, counsel was not ineffective even if he did not advise petitioner about the possibility of collateral consequences. (ECF No. 9-7, PageID.318-19).

In 2010, the Supreme Court held that a trial counsel's failure to inform his client of that a guilty plea would lead to his deportation invalidated the defendant's guilty plea, even though deportation might be considered a collateral consequence of the plea. *See Padilla v. Kentucky*, 559 U.S. 356, 374 (2010).

Several courts have declined to extend the holding in *Padilla* to other collateral consequences.

In *Chavarria v. United States*, 739 F.3d 360, 362-63 (7th Cir. 2014), the Seventh Circuit held that "[a] lawyer's advice about matters not involving the 'direct' consequences of a criminal conviction—collateral matters—is, in fact, irrelevant under the Sixth Amendment; such advice is categorically excluded from analysis as professionally incompetent, as measured by *Strickland*," and that

19

"*Padilla* departed from this direct-collateral distinction [only] because of the 'unique' nature of deportation."

In *Parrino v. United States*, 655 F. App'x 399, 403 (6th Cir. 2016), the Sixth Circuit Court of Appeals held that counsel's alleged failure to advise the defendant that a misdemeanor conviction would likely subject him to mandatory exclusion from participation in any federal health-care program so that he would be prevented from working as a pharmacist, was not ineffective assistance of counsel, since this was a collateral consequence of the plea.  In so ruling, the Sixth Circuit concluded that "[T]he holding in *Padilla* was limited to advice 'concerning the specific risk of deportation' and was based upon a long tradition that placed deportation in 'close connection to the criminal process,' which made deportation 'uniquely difficult to classify as either a direct or a collateral consequence.'" *Id.* at 403 (quoting *Padilla*, 559 U.S. at 366).  "The *Padilla* Court also noted the particularly 'harsh consequences of deportation.'" *Id.* (quoting *Padilla*, 559 U.S. at 360).

In *Santiago v. Laclair,* 588 F. App'x 1 (2d Cir. 2014), a case directly on point, the Second Circuit held that the Supreme Court's holding in *Padilla* that defendants be advised of possible deportation requirements could not be extended to require defense counsel to advise a defendant of the possibility of consecutive sentencing when counseling a guilty plea. The Second Circuit concluded that:

"*Padilla's* narrow holding, limited specifically to the unique penalty of deportation, affords little support to Santiago." *Id.* at 4.  The Second Circuit concluded that petitioner was not entitled to habeas relief on his claim that trial counsel was ineffective for failing to advise him that he could receive a consecutive sentence to the undischarged portion of an old sentence by pleading guilty to a new felony. *Id.*

In the absence of clearly established Supreme Court precedent requiring trial counsel to advise their clients during the plea process that they might receive a consecutive sentence, petitioner is not entitled to habeas relief on his claim that trial counsel was ineffective for failing to advise him that his sentences could be served consecutively.  Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claims.

Petitioner in his third claim alleges that appellate counsel was ineffective for failing to raise most of the claims raised by petitioner in his petition.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel, both on appeals of right, *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985), and on first-tier discretionary appeals. *Halbert v. Michigan*, 545 U.S. 605, 609-10 (2005).  Nonetheless, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  A habeas court reviewing

21

an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016) (per curiam).

Petitioner's claims are meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Petitioner is not entitled to relief on his third claim.

The Court therefor denies the petition for writ of habeas corpus.

The Court denies petitioner a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must

issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, petitioner is denied a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).

Petitioner is denied leave to appeal *in forma pauperis,* because the appeal would be frivolous. See Fed. R. App. P. 24(a).

## IV.  CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

DATED: March 8, 2022